Filed 12/16/21  Harris v. Amina CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL HARRIS, | B302617 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STRO05125) |
| v. | |
| SALEE' AMINA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara R. Johnson, Judge. Affirmed.

SaLee' Amina, in pro. per., for Defendant and Appellant.

Michael Harris, in pro. per., for Plaintiff and Respondent.

_____

Defendant SaLee' Amina appeals from an elder abuse restraining order entered against her after she befriended 95-year-old Leonard Harris at church and, within a month, ousted his longtime caregiver, gained control over his finances from his son, Michael Harris,[1] who had been managing Leonard's finances for at least eight years, and assisted Leonard in filing reports of wrongdoing against Michael and the former caregiver. Michael filed a request for a restraining order against Amina, seeking to protect Leonard, as well as himself and the former caregiver. After Amina filed a response to the request, and multiple hearings were held at which Leonard's court-appointed attorney and the Public Guardian weighed in, the trial court issued a permanent, three-year restraining order, protecting Leonard, Michael, and the former caregiver from Amina, and denied Amina's motion for reconsideration.

Amina contends the trial court violated her constitutional rights by issuing the permanent restraining order without affording her a fair hearing. She also contends there is insufficient evidence demonstrating Leonard needed protection from her.[2] Although Leonard passed away while this appeal was pending, Amina continues to pursue the appeal, citing the harm to her reputation from having the elder abuse restraining order entered in the California Law Enforcement Telecommunications System (CLETS). For the reasons explained below, we reject Amina's contentions and affirm the order.

---

[1] Because father and son share the same surname, we will refer to them by their first names to avoid confusion.

[2] Amina does not independently address the sufficiency of the evidence supporting the restraining order as to Michael and Leonard's former caregiver.

## BACKGROUND

### I. Within One Month of Befriending Leonard, Amina Assumes Total Control Over His Affairs

In or about June 2019, when Leonard was one month shy of turning 96 years old, Amina met him at church and befriended him.[3] According to Amina, on or about June 19, 2019, she became concerned that Leonard was not receiving proper care from his In-Home Supportive Services (IHSS) caregiver of more than five years, A.O.[4] Amina visited Leonard at his home every day between June 23 and July 1, 2019. She asserts that at each visit, Leonard was unfed and unbathed, and his apartment was not clean. Amina purchased food and vitamins for Leonard. Based on discussions with Leonard, Amina believed A.O. was being paid for more hours than she spent caring for Leonard.

Leonard's son Michael, who lived in Germany, heard about Leonard's new friendship with Amina on or about June 23, 2019, through discussions with A.O. Based on in-person visits and video calls, Michael believed A.O. was providing excellent care to Leonard. Michael was aware of the amounts Leonard paid A.O. for her services. Michael had been managing Leonard's finances for the past eight-to-ten years. Michael opened a joint bank account with Leonard, into which Leonard's Social Security

---

[3] Neither Amina's briefing nor the record on appeal discloses the date Amina first met Leonard. The first interaction with Leonard that Amina describes occurred on June 19, 2019. According to Michael, Amina first met Leonard in June 2019.

[4] We have suppressed Leonard's former caregiver's name because Amina has made serious accusations against her in this proceeding, and there is no indication in the record of any finding of wrongdoing against A.O.

benefits and Veterans Affairs (VA) pension payments were deposited. Through this bank account, Leonard paid A.O. (and rent and other bills) by automatic transfers, which Michael set up.

On July 1, 2019, Amina assumed Leonard's care. On or about the same day, she held a meeting with Leonard, A.O., and Michael (by telephone) to discuss A.O.'s services. Amina made it clear during the meeting that she wanted to dismiss A.O. Later that day, Amina terminated A.O.'s services, apparently with Leonard's approval. According to Amina, she did not replace A.O. with another IHSS caregiver because none would agree to send her daily photographs of Leonard and daily reports regarding his care, as she demanded. She found two men to assist her in providing care for Leonard.

On July 3, 2019, Amina sent a message to A.O. inquiring about the key to Leonard's garage. Amina told A.O. she needed the key because: "A man wants to rent Len's garage to park his car, so having no access to it is costing Len money that he needs."

After dismissing A.O., Amina began investigating Leonard's financial affairs. Michael told Amina everything was in order, and she should not concern herself because he would continue managing Leonard's finances. According to Amina, Leonard did not want Michael managing his finances. In early July 2019, Amina took Leonard to the bank to review his account records. Amina asserts Leonard was surprised when he saw the amount of the money transfers to A.O. from his and Michael's joint bank account, and Leonard stated he had not authorized such transfers. Amina represents that the bank suggested Leonard close his joint account with Michael and transfer his money to a new account. A few days later, on July 9, 2019, with

4

Amina's assistance, Leonard opened a new bank account and transferred money from his joint account with Michael into the new account. Amina was a signatory on the new account. Leonard's joint account with Michael remained open.

Around the same time, Leonard purportedly signed a "Certified Statement" on a form provided by the City of Santa Monica Housing Authority, stating: "I, Len Harris, give permission to my Housing Specialist to communicate in any way about any matter relevant to my housing with SaLee [*sic*] Barnes,[5] who is my advocate, and is providing for my care." Leonard had been renting an apartment in Santa Monica with assistance from a Section 8 housing program.

The following week, in mid-July 2019, Amina obtained a new cellphone for Leonard, a smartphone, which he could not operate on his own. Thus, Leonard could not speak with Michael unless someone else (e.g., Amina) was present. During a phone call in mid-July 2019, Leonard told Michael that he had misplaced his hearing aids, so he could not hear what Michael was saying to him during the call.

Amina sent Michael emails and photographs of Leonard, showing Michael the types of food she purchased for Leonard and the various outings on which she took Leonard, including a dance at a senior center. On July 18, 2019, an email was sent to Michael from Leonard's email address, stating: "Salee [*sic*] [Amina] showed me how to use a magnifier on the computer internet so I can read it. The text on the phone is too small to see. Salee has been great for me in every way. A lifesaver. I paid her nothing. No one pays her. She has spent her own

_____

[5] Amina also used the surname Barnes.

money to help me and she has done an amazing job. Please try to show her respect. Len."

Also on July 18, 2019, the VA conducted a home visit with Leonard. Amina was present. According to the "Progress Notes" from the visit, the nurse interviewed Leonard and Amina. Leonard told the nurse that Amina and the caregivers who assisted her took good care of him. He also indicated he believed he needed to go to the hospital because he had not had a bowel movement in two months. Amina told the nurse that A.O. had committed physical neglect of Leonard and Michael had committed financial neglect. The Progress Notes indicate the nurse was aware of the tension between Amina and Michael regarding Leonard's care. The nurse found Leonard's apartment to be neat and clean, and there was ample food. The nurse also noted Leonard was in clean clothes, but he had not had a bath in two days and he was unshaven. Leonard's hearing aids were still missing, and Amina said she and Leonard's other caregivers would look for them. The nurse told Leonard and Amina that she would drop by periodically, and they had no objection.

According to Amina, the following day, on July 19, 2019, she took Leonard to a VA audiology clinic to replace his hearing aids. She also took him to both a Social Security Administration office and a VA office to introduce herself as his agent and to switch the automatic deposits of his benefits and pension payments to the new bank account on which she was a signatory.

The same day, July 19, 2019, Leonard signed a notarized "Power of Attorney," appointing Amina his "Attorney-In-Fact" for "all matters" (including a lengthy list of specified matters) and "revok[ing] any and all general powers of attorney and special powers of attorney that previously have been or may have been

signed by [him]."  The document states that Michael failed to protect Leonard's financial interests, A.O. received money from Leonard to which she was not entitled, and Leonard now wanted Amina to manage his bank account.  The Power of Attorney also states:  "The continual diminishing of my bank balance by [A.O.] was terminated by SaLee's effective intervention; and my life has improved tremendously since SaLee' became involved.  I trust her & want her to continue to help me, and to have exclusive control over anyone else's interference in my life.  SaLee' has been a lifesaver to me, and I know my life will improve with her astute supervision, which I have observed & of which I approve."  The Power of Attorney provided for "reasonable compensation" to Amina for her services.  Immediately after Leonard signed the Power of Attorney, Amina accompanied him to his bank for a meeting regarding his financial affairs and Amina's role as his agent.

Later in the day on July 19, 2019, after Amina and Leonard returned to his apartment after the above-referenced errands, a social worker who had been assigned to Leonard's case made an unannounced visit to Leonard's apartment based on reported concerns about Leonard's care, presumably from Michael and/or A.O.  The social worker reported the apartment was dirty and Leonard appeared disheveled and weak; his condition appeared worse than it had on previous encounters.  The social worker decided to have Leonard transported to a VA hospital to evaluate his condition.[6]

---

[6] It is not clear from the record before us what treatment Leonard received at the VA hospital, but he remained in the hospital and then a rehabilitation center for at least a couple months (based on representations made at various court

Amina left Leonard's apartment during the July 19, 2019 home visit by the social worker. In an email to a friend dated the same day as the visit, Amina explained she left because she feared she would be arrested based on false reports by Michael and A.O. Apparently, a police officer accompanied the social worker to Leonard's apartment for the home visit.

Amina visited Leonard in the hospital. On July 21, 2019, she requested to speak with a hospital social worker. She informed the social worker about her Power of Attorney. She also told the social worker that Leonard wanted to speak with the social worker to report his concerns about Michael and A.O. According to the hospital's Progress Notes from this date, Leonard told the social worker that A.O. had been stealing money from his bank account, Michael was aware of it, and he wanted nothing to do with Michael or A.O. Leonard also told the social worker that he wanted Amina to care for him and handle his affairs, adding, " 'I think [Amina] is the greatest woman I have ever known.' " When the social worker asked him about the care A.O. had provided, Leonard responded: "A[.O.] was taking pretty good care of me, but I didn't like some of the things she did. Breakfast was always good because I got cereal and grits. For lunch and dinner it was always pizza. Sometimes she didn't come to see [me] and I had to stay there alone with no one to help."

Michael flew in from Germany. He attempted to see Leonard on July 21, 2019. Amina instructed hospital staff not to allow Michael to visit Leonard or have access to documents,

_____

hearings), and perhaps longer. According to Michael, Leonard was diagnosed with a urinary tract infection. Amina asserts Leonard contracted an infection while at the VA Hospital.

8

including medical records and her power of attorney. Staff complied with Amina's instructions.

Amina prepared various documents for Leonard to sign while he was in the hospital. On July 21, 2019, Leonard purportedly signed a one-page document addressed to "The State of California, County of Los Angeles, City of Santa Monica, Veterans' Administration, In-Home Support Services, Police & Community Corporation (landlord)," stating Amina was his representative and legal advocate and the only person who should handle any of his affairs and have access to his apartment and garage (other than building management). The document accused Michael and A.O. of elder abuse and stated, "both intentionally created false reports to attempt to shift blame away from them onto an innocent party; which has caused chaos and severe emotional distress to me and to SaLee' Amina."

Also on July 21, 2019, Leonard purportedly signed a "Request for a Reasonable Accommodation" on a form provided by the City of Santa Monica Housing Authority. The document assigned Amina to make the request on Leonard's behalf, seeking a residence with an extra bedroom to accommodate a live-in aide.

According to Michael, on or about July 21, 2019, he logged into the online bank records for his joint account with Leonard and noticed there was no money to pay Leonard's next rent payment that was scheduled to be deducted from the account.[7] Leonard's new account with Amina was visible to and accessible

---

[7] There is no indication in the record that Amina and/or Leonard changed the automatic deduction for the next rent payment so that it would come out of the new account where Amina and Leonard had transferred the money from Leonard and Michael's joint account.

9

by Michael when he logged into his joint account with Leonard. Michael transferred money from Leonard and Amina's new account into a savings account; and then he transferred enough money back into his joint account with Leonard to cover Leonard's next rent payment. The rent payment was later deducted from Leonard and Michael's joint account per the usual schedule.

## II. Michael Files a Request for a Restraining Order Against Amina

On July 29, 2019, Michael filed a request for a restraining order against Amina, seeking to protect Leonard, himself, and A.O. from Amina. In his declaration supporting the request, Michael explained that on June 15, 2015, Leonard appointed Michael as his agent in a document titled "Advance Directive: Durable Power of Attorney for Health Care and Living Will." Michael also explained: "My father is almost 96-years-old. He requires assistance bathing, cooking, shopping, cleaning, dressing, using the toilet, administering medications, and walking. He suffers short-term memory loss and I am in the process of trying to get him evaluated for cognitive impairment."

In asserting Amina's actions constituted abuse, Michael stated in his declaration that Amina fired A.O. and failed to replace her with a full-time caregiver. Leonard did not have hearing aids while he was under Amina's care. Amina emptied the joint bank account Michael had held with Leonard for around 10 years. She moved her furniture and personal belongings into Leonard's apartment; she sought to rent out his garage; and she was attempting to transfer his Section 8 housing assistance to a new location outside Santa Monica, where he had lived for more than 15 years. She isolated Leonard by getting him a new cell

10

phone with a new phone number and a new email address. She intercepted all Leonard's calls and emails. Her neglectful care resulted in Leonard being hospitalized.

On July 29, 2019, the trial court issued a temporary elder abuse restraining order against Amina, protecting Leonard, Michael, and A.O.[8] Michael served it on Amina on or about July 31, 2019. Amina continued to act as Leonard's agent under the Power of Attorney, including signing a document on his behalf on August 6, 2019 concerning his VA benefits. At some point, the VA hospital learned about the temporary restraining order and allowed Michael access to Leonard under the June 15, 2015 durable power of attorney and living will.

On August 16, 2019, Amina, as a self-represented litigant,[9] filed a response to the temporary elder abuse restraining order, denying Michael's abuse allegations and stating that Leonard had reported Michael and A.O. for abuse to Adult Protective Services and the VA hospital. She attached 28 pages of exhibits to her response, including the July 19, 2019 Power of Attorney, the July 21, 2019 report of wrongdoing against Michael and A.O. that she prepared for Leonard to sign (described above), and statements from Amina's friends/associates describing what they

---

[8] Amina did not include this order in the record on appeal. Nor did she include Michael's request for the restraining order. She did, however, include Michael's declaration in support of his request for the restraining order, but she omitted the document he indicated he attached to his declaration (his durable power of attorney). She acknowledges she was served with the temporary restraining order.

[9] Amina represented herself below, and she represents herself on appeal.

knew regarding Michael's claims against Amina and Amina's claims against Michael and A.O.

On August 19, 2019, the trial court held a hearing, reissued the temporary restraining order, and set another hearing on the matter for September 11, 2019. There is no transcript of the August 19, 2019 hearing in the record before us, so it is not clear what occurred. It appears Amina was present at the hearing based on statements the trial court made at a subsequent hearing.

Also on August 19, 2019, Amina filed a "Request for Termination or Modification of TRO," a "Request to Strike TRO," and an "Addendum Brief and Exhibits in Support of Response to TRO," detailing her allegations against Michael and A.O. She attached to the latter document 150 pages of exhibits, including, but not limited to, the VA Progress Notes described above; some of Leonard's bank statements; emails and photographs of Leonard that she exchanged with Michael; the City of Santa Monica Housing Authority and VA documents described above; reports and photographs regarding Leonard's care under A.O.; typewritten documents purportedly dictated by Leonard describing Amina's care and Michael's and A.O.'s alleged wrongdoing; and receipts for items she purchased for Leonard.

On September 11, 2019, the date of the next hearing in this matter, Amina filed a request for a continuance to allow her time to file a cross-TRO against Michael and A.O. and to subpoena witnesses from Leonard's bank. She also requested the continuance as an accommodation for her disability, stating she has Multiple Sclerosis, and her doctor had recommended she be hospitalized. She attached letters from medical providers

12

regarding her condition, dated May 2014, July 2015, September 2015, and November 2018.

Also on September 11, 2019, Amina filed a document titled "Relevant Crime Report Against Michael Harris." Therein, she asserted that Michael and A.O. had manipulated their way back into Leonard's life, and Leonard was no longer accusing them of wrongdoing, and he was now telling people A.O. was his current caregiver. Amina attached more than 50 pages of exhibits to this document, including a "short summary of humanitarian activities of SaLee' Amina and awards and commendations, attesting to her good character," as well as numerous other documents she had submitted with previous filings.

## III. Hearings on Michael's Request for a Restraining Order and in a Related Probate Matter

### A. September 11, 2019 hearing

Amina appeared at the September 11, 2019 hearing on Michael's request for a permanent elder abuse restraining order, held before Judge Gary D. Roberts. Michael also appeared, represented by counsel from Bet Tzedek Legal Services. Judge Roberts informed the parties that he used to be involved with Bet Tzedek, and he was at one time the chair of its board; but that would not prevent him from being fair in this case, and he was not going to recuse himself. Amina made an oral motion to disqualify Judge Roberts under Code of Civil Procedure section 170.6, which the trial court denied as untimely.

The trial court turned to Amina's request to continue the hearing as an accommodation of her Multiple Sclerosis. Amina asked for additional time to file a cross-TRO and to subpoena witnesses.

13

Before ruling on Amina's request, the trial court referenced a probate matter involving a petition for a conservatorship for Leonard, and inquired about the status of that matter as it related to who had authority to pursue an elder abuse restraining order on Leonard's behalf. Amina responded that her involvement in the probate matter was as an objector because she did not believe Leonard needed a conservator. Michael's counsel informed the court that the Public Guardian had filed a petition for a conservatorship, and Michael did not object to the conservatorship. Counsel added that Michael had the authority to file the request for an elder abuse restraining order on behalf of Leonard as Leonard's agent under the June 15, 2015 durable power of attorney and living will. Amina argued Michael's authority to act under the 2015 document was terminated by the July 19, 2019 Power of Attorney appointing her as Leonard's attorney-in-fact.

Leonard's court-appointed attorney in the probate matter was present at this September 11, 2019 hearing on Michael's request for an elder abuse restraining order. Leonard's attorney informed the trial court that Leonard consented to the conservatorship and the relief requested in the petition, which included the revocation of the July 19, 2019 Power of Attorney appointing Amina as Leonard's attorney-in-fact. Amina reiterated that she would be objecting in the probate matter to the Public Guardian's appointment as conservator for Leonard because "it takes away [Leonard's] freedom and self-respect." She also argued that Leonard had been doing well under her care.

The trial court inquired about the status of Leonard's bank accounts. Michael's counsel informed the court that Amina

14

removed $1,900 from Leonard's new bank account on August 2, 2019, after she was served with the temporary restraining order. Amina responded that she was authorized to do so because she was a signatory on the account, she was acting under the July 19, 2019 Power of Attorney, and was trying to protect the funds from Michael.

The trial court indicated it was going to continue the hearing on Michael's request for an elder abuse restraining order because it wanted guidance from the probate court regarding who had the authority to request the restraining order on Leonard's behalf. Michael's counsel objected to the continuance because Michael needed to return to Germany for work. The court then stated it would have the parties return in the afternoon after the lunch recess to begin witness testimony. Amina objected based on her medical condition. The court stated that in observing Amina throughout the hearing, and weighing the hardship to Michael of continuing the hearing, the court decided to proceed.

After the lunch recess, the trial court explained to Amina that it denied her request for an accommodation based on her medical condition because the accommodation she had requested was additional time to file papers. The court stated: "[A]dditional time to file papers is not a reasonable accommodation that I would make in this circumstance."

Michael testified at the hearing. He stated that Leonard's physical and mental health had declined rapidly since he was admitted to the hospital on July 19, 2019. When Leonard was transferred to a rehabilitation center on August 13, 2019, he was unable to stand, and he could not sit up for prolonged periods of time. He had problems with his short-term memory and could

15

not remember the names of people who came to see him that morning.

Michael stated that he and Leonard had always had a very good relationship. About eight-to-ten years before, Michael began assisting Leonard with his finances. They established a joint bank account, and Michael managed the account online with Leonard's consent. When Michael set up the automatic transfers to pay A.O., Leonard approved them.

Michael testified about his interactions with Amina, including the July 1, 2019 telephone meeting described above, during which Amina stated she wanted to dismiss A.O. A few days after that meeting, when Amina accused A.O. of stealing money from Leonard's bank account, Michael explained to her that the transfers of funds to A.O. were valid payments for services rendered. Michael assured Amina that Leonard's finances were in order and he (Michael) would continue to manage them.

Michael also testified that a couple weeks after Amina assumed Leonard's care, Michael could no longer communicate with Leonard because Amina bought him a smartphone which he could not operate on his own. Leonard needed Amina's help to use the phone, and he did not have his hearing aids so he could not hear what Michael was saying to him during phone calls.

Michael explained how he was able to access the new bank account that Leonard opened on July 9, 2019 with Amina as the signatory. When Michael logged into the online bank records for his joint account with Leonard, the records for the new account were visible to Michael. On July 21, 2019, Michael saw that his joint account with Leonard only had a balance of $1, and there was a rent payment due to be deducted from the account in a

16

couple days. So, Michael transferred money from Leonard's new account into a savings account; and then he transferred enough money back to his joint account with Leonard to cover Leonard's rent payment. In August 2019, Michael again had to transfer money into his joint account with Leonard to cover Leonard's rent payment because Amina had not switched the rent payment to the new account where Leonard's benefits and pension payments were now being deposited.

After Michael testified on direct examination, there were only a few minutes remaining before the end of the court day. The trial court informed Amina that she would have the opportunity to cross-examine Michael on the next court date. Amina objected to waiting until the next court date. The court asked her if she wanted to schedule the next hearing for a date soon or a date farther out. Amina responded that she wanted a date farther out because she wanted to subpoena witnesses, including employees of Leonard's bank. The court scheduled the next hearing for October 2, 2019, leaving the temporary restraining order against Amina in place.

### B. September 13, 2019 hearing in the probate matter

On September 13, 2019, Amina appeared at a hearing on the Public Guardian's conservatorship petition, held before Judge Barbara Johnson. The Public Guardian, the Public Guardian's attorney (from the Office of the Los Angeles County Counsel), and Leonard's court-appointed counsel also appeared. Michael was present in the courtroom. Leonard's counsel informed the court that, as stated in the petition, Leonard wanted to suspend the July 19, 2019 Power of Attorney appointing Amina as Leonard's attorney-in-fact. Amina stated the Power of Attorney was valid,

17

and she intended to file objections to the Public Guardian's petition for conservatorship.

The Public Guardian's counsel informed the probate court that Amina had withdrawn $1,900 from Leonard's bank account since the temporary restraining order was issued against her. The court ordered that there be no further withdrawals of Leonard's money.

The probate court continued the matter until September 27, 2019.

### C. September 18, 2019 nonappearance case review of restraining order matter

As set forth in a September 18, 2019 minute order, on that date, the trial court (Judge Roberts) conducted a case review in this matter (without a hearing) and determined "the interests of justice would be served" by having the same judge hear both Michael's request for an elder abuse restraining order against Amina and the Public Guardian's petition for a conservatorship. Accordingly, the trial court advanced the October 2, 2019 hearing on Michael's request for a restraining order to September 18, 2019, and continued the matter to September 27, 2019 in the probate court. On September 18, 2019, the clerk of the court mailed a notice of entry of this order to Amina at her address of record (the same address she listed on her pleadings in the trial court).

### D. September 27, 2019 hearing on the Public Guardian's petition for a conservatorship and Michael's request for an elder abuse restraining order against Amina

Amina did not appear at the September 27, 2019 hearing. There is no indication in the record that she informed the probate

18

court she would not be appearing or filed a request for a continuance.

The probate court (Judge Johnson) began with the hearing on the Public Guardian's petition for a conservatorship. Leonard's court-appointed attorney informed the court that Leonard did not feel well enough to attend the hearing, and there was documentation of Leonard's medical inability to attend, but Leonard informed his attorney that he had no objection to a temporary conservatorship. The court granted the temporary conservatorship and revoked the July 19, 2019 Power of Attorney appointing Amina as Leonard's attorney-in-fact. The court ordered that Michael retain limited powers under the June 15, 2015 durable power of attorney and living will to pursue the elder abuse restraining order against Amina. The court ordered Amina to turn over all of Leonard's funds and financial documents to the Public Guardian by September 30, 2019. The Public Guardian's counsel agreed to give Amina notice. Leonard's counsel informed the court that Amina was given notice of this hearing (the September 27, 2019) as to both the conservatorship and restraining order matters.

Turning to Michael's request for an elder abuse restraining order against Amina, Michael's counsel provided the probate court with a summary of the prior proceedings and the evidence he presented in the case. The court asked Leonard's court-appointed attorney if he would join in the request for a restraining order against Amina, and he said that he would. The court granted a permanent, three-year restraining order, protecting Leonard, Michael, and A.O. from Amina.

## IV.  Amina Files a Motion for Reconsideration of the Restraining Order

On October 11, 2019, Amina filed a motion for reconsideration of the restraining order.  Amina asserted, among other things, she did not receive notice "of consolidation of the TRO & Probate cases"; her due process rights were violated; Michael's testimony showed he committed identity theft and financial fraud by accessing Leonard's new bank account and withdrawing funds; the order is contrary to the evidence submitted by Amina; the erroneous order has been entered in CLETS, which has harmed her ability to earn a living and has caused her trauma and stress, exacerbating her Multiple Sclerosis symptoms; the probate court was misled by the false statements of counsel for the Public Guardian, Michael, and Leonard; and the court was deprived of Leonard's testimony.

Amina also asserted in her motion that "she was victimized by a manipulative consolidation of case [*sic*] because she was too medically impaired to attend one hearing, after she had already attended three, and had requested an extension of time."  Amina did not submit any evidence indicating she did not attend the September 27, 2019 hearing due to her medical condition.  She did not submit a declaration with her motion.

Amina attached to her motion nearly 30 pages of exhibits, including a "crime report" detailing Michael's and A.O.'s wrong doing; some of Leonard's bank statements; the July 19, 2019 Power of Attorney; and the July 21, 2019 report of Michael's and A.O.'s alleged wrongdoing that she prepared for Leonard to sign.

On October 23, 2019, Leonard's court-appointed counsel filed an opposition to Amina's motion for reconsideration, arguing Amina failed to timely serve her motion, and she did not include

20

the affidavit required under Code of Civil Procedure section 1008, subdivision (a).

On November 4, 2019 the probate court (Judge Johnson) held a hearing on Amina's motion for reconsideration. At the outset of the hearing, counsel for Leonard and the Public Guardian were present, but Amina was not. After a brief recess, Amina appeared. The court informed Amina that its tentative decision was to deny the motion for reconsideration for failure to comply with Code of Civil Procedure section 1008.

Amina did not address the court's tentative decision. She informed the court that she had subpoenaed six witnesses who were present in the courtroom. The court noted that Amina did not file a request to present witness testimony. Nor did she submit witness declarations with her motion for reconsideration. The court declined to hear testimony from Amina's witnesses.

Amina asserted the court had "been subjected to such an extraordinary fraud" by the attorneys who appeared at the September 27, 2019 restraining order hearing. She also asserted that Michael admitted he committed identity theft against Leonard during his testimony on September 11, 2019 before Judge Roberts.

The court took the motion under submission. Amina continued to argue her case as the court went off the record.

Later in the day, on November 4, 2019, the court issued a minute order denying Amina's motion for reconsideration on the ground she failed to comply with Code of Civil Procedure section 1008. The court explained, in pertinent part, that Amina "failed to include any kind of affidavit or declaration with the Motion. Nothing presented is sworn under penalty of perjury. Accordingly, the Motion is denied as procedurally invalid."

21

## DISCUSSION

Amina appeals from the restraining order, contending she did not receive a fair hearing and there is insufficient evidence demonstrating Leonard needed protection from her.[10]  Michael, as a self-represented litigant, filed a respondent's brief disputing Amina's contentions.  Neither the Public Guardian nor Leonard's court-appointed counsel in the probate matter filed a respondent's brief because Leonard passed away while this appeal was pending, and before briefing was due.  Amina continues to pursue the appeal, citing the harm to her reputation from having the elder abuse restraining order entered in CLETS.

## I.  Amina's Claims of Procedural Irregularities Lack Merit

Amina contends the trial court violated her constitutional rights by issuing the permanent restraining order on September 27, 2019 in her absence, without providing her notice of the hearing.  The record demonstrates the trial court served Amina with notice of the time and location of the September 27, 2019 hearing.  When Amina appeared at the November 4, 2019 hearing on her motion for reconsideration, she did not assert she had not received notice of the September 27, 2019 hearing.

Amina contends she did not have an opportunity to cross-examine Michael, testify, or present testimony from her witnesses.  This is not because the trial court prevented her from doing so; it is because she did not appear at the September 27, 2019 hearing to present her case, after being served with notice of the hearing.

---

[10] Amina does not independently address the sufficiency of the evidence supporting the restraining order as to Michael and A.O.

To the extent Amina claims she did not appear at the September 27, 2019 hearing due to her medical condition, there is no evidence in the record supporting such a claim.

## II. Based on the Evidence in the Record, the Trial Court Did Not Err in Granting the Permanent Restraining Order

Under Welfare and Institutions Code section 15610.07, subdivision (a), part of the Elder Abuse and Dependent Adult Civil Protection Act, " 'Abuse of an elder or dependent adult' means any of the following:

"(1) Physical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering.

"(2) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering.

"(3) Financial abuse, as defined in Section 15610.30."

Under Welfare and Institutions Code section 15610.30, subdivision (a)(1), a person commits financial abuse when he or she "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both."  "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.  (Welf. & Inst. Code, § 15610.30, subd. (b).)

An "attorney-in-fact of an elder or dependent adult who acts within the authority of a power of attorney" may file a request for an elder abuse restraining order.  (Welf. & Inst. Code,

§ 15657.03, subd. (a)(2).) The person requesting the order bears "the burden of establishing his case by a preponderance of the evidence." (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 138.) An appellate court reviews "the issuance of a protective order under the Elder Abuse Act for abuse of discretion, and we review the factual findings necessary to support the protective order for substantial evidence." (*Id.* at p. 135.)

Substantial evidence in the record demonstrates that within a month of befriending Leonard, Amina took control of every aspect of his life. She fired A.O., his caregiver of more than five years. She interfered with his ability to communicate with Michael by replacing his cell phone with a smartphone he could not operate on his own. She wrested control of his financial affairs from Michael, who had been managing such affairs for near a decade. She informed the City of Santa Monica Housing Authority that Leonard wanted to move out of his apartment and into a residence with an extra bedroom to accommodate a live-in aide (presumably herself). She moved her personal belongings into his apartment. She tried to rent out his garage.

When the Public Guardian stepped in, Amina objected, even after Leonard's attorney indicated Leonard consented to the Public Guardian's appointment as temporary conservator. She argued Leonard wanted the freedom to take care of himself, and yet the Power of Attorney she prepared for Leonard to sign allowed her to control every aspect of his life.

Substantial evidence demonstrates Amina's actions in isolating Leonard from Michael and A.O. caused him mental suffering within the meaning of Welfare and Institutions Code section 15610.07, subdivision (a)(1). Amina was constantly asking Leonard to sign documents and make verbal reports

24

regarding alleged wrongdoing by Michael and A.O., and the matter clearly upset Leonard. Once Leonard was separated from Amina, after the temporary restraining order was granted, he no longer endorsed the reports of wrongdoing that she had prepared for him to sign and encouraged him to make verbally.

Substantial evidence also demonstrates Amina committed financial abuse. She transferred funds out of Leonard's joint bank account with Michael, and switched the automatic deposits of his benefits and pension payments, without making any arrangement for the payment of his rent, which was automatically deducted from his joint account with Michael. If Michael had not stepped in and transferred funds back into his joint account with Leonard in July and August 2019, Leonard would have defaulted on his rent payments and potentially lost his Section 8 housing. Amina should have known her actions were "likely to be harmful" to Leonard. (Welf. & Inst. Code, § 15610.30, subd. (b).)

Based on the evidence in the record before us, the vast majority of which was submitted by Amina, the trial court did not abuse its discretion in issuing the permanent elder abuse restraining order protecting Leonard. Amina does not independently challenge the sufficiency of the evidence supporting the restraining order as to Michael and A.O. or argue the trial court abused its discretion in protecting Michael and A.O. Even if she had, we would affirm the order as to Michael and A.O., based on Amina's harassment with reports of alleged wrongdoing that Leonard no longer endorsed.

The trial court did not err in denying Amina's motion for reconsideration of the restraining order. Code of Civil Procedure section 1008, subdivision (a) requires a party moving for

reconsideration to "state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." Amina did not submit an affidavit or declaration with her motion, and the motion was not based on "new or different facts, circumstances, or law." (*Ibid.*)

Amina complains that the trial court did not allow her to present her case, including the testimony of witnesses, at the hearing on her motion for reconsideration. As discussed above, the time for her to present her case was at the September 27, 2019 hearing, which she did not attend after she was served with notice of the hearing.

Amina seeks a reversal of the restraining order so she may have the matter removed from CLETS. The ease with which Amina took control over the life of a complete stranger is alarming, and we have no cause to reverse the order.

## DISPOSITION

The order is affirmed.  Each side is to bear its own costs on appeal.

NOT TO BE PUBLISHED

                                                 CHANEY, J.

We concur:


        ROTHSCHILD, P. J.


        CRANDALL, J.*

---

        * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.